UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROBERT M. VARNADORE ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No.    2:22-cv-2062 |
| SHAWNEE F, LLC, ) | JURY TRIAL DEMANDED |
| d/b/a SHAWNEE MISSION FORD ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW the plaintiff, by and through undersigned counsel, and for his complaint and causes of action states and alleges as follows:

### Parties

1. Plaintiff is a citizen and resident of Overland Park, Johnson County, Kansas.

2. Defendant Shawnee F, LLC d/b/a Shawnee Mission Ford ("**Defendant**") is a Delaware limited liability company that is registered to do business in the State of Kansas, doing business in Shawnee, Kansas, at all times relevant herein. Defendant may be served with process through its registered agent: Corporation Service Company, 2900 SW Wanamaker Dr., Ste. 204, Topeka, KS 66614.

3. At all relevant times, Plaintiff was an "employee" of Defendant as defined in 42 U.S.C. § 12111(4).

4. At all relevant times, Defendant was an "employer" as defined in 42 U.S.C. § 12111(5).

### Jurisdiction & Venue

5. This Court has jurisdiction in this action pursuant to 28 U.S.C. § 1331, in that it arises under the laws of the United States of America, namely, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq* (the "**ADA**").

1

6. This Court may exercise supplemental jurisdiction of all related common law/state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), by virtue of the fact that a substantial part of the events or omissions giving rise to the claims set forth herein occurred in the State of Kansas, and that Defendant is registered to do, and is doing business in the State of Kansas, subjecting it to personal jurisdiction in this action and making it a "resident" of this judicial district pursuant to 28 U.S.C. § 1391(c).

## Exhaustion of Administrative Remedies

8. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("**EEOC**") on June 3, 2021.

9. The EEOC issued its Notice of Right to Sue to Plaintiff on December 29, 2021. A true and accurate copy of which is attached hereto as **Exhibit 1**.

10. Plaintiff brings this action within ninety (90) days of the receipt of a Notice of Right to Sue.

11. All conditions precedent to filing suit have been performed or have occurred.

## Factual Allegations

12. Plaintiff is a military veteran that served in Afghanistan.

13. Plaintiff suffers from post-traumatic stress disorder ("**PTSD**") as a direct result of his military service.

14. As a result of Plaintiff's PTSD, Plaintiff at times experiences significant anxiety, increased heart rate, becomes withdrawn, and has difficulty with mental acuity and concentration.

15. Previously, Plaintiff was able to successfully manage his PTSD with medication and therapy.

16. Prior to his employment with Defendant, Plaintiff worked as a service manager for automobile dealerships for six (6) years.

17. Plaintiff applied for the Service Manager position at Defendant's automobile dealership located at 11501 Shawnee Mission Pkwy., Shawnee, KS 66203 (the "**Dealership**").

18. Plaintiff discussed details of the Service Manager position with Gary Montoya ("**Mr. Montoya**"), the Dealership's General Manager at the time, and John Petty ("**Mr. Petty**"), the Dealership's corporate representative.

19. Plaintiff and Mr. Montoya discussed the problems that the Dealership's service department was experiencing, including the fact that the department was on a probation status with Ford Motor Company due to the Dealership's unsatisfactory performance in regard to their warranty service work, and that the department had been losing money for several years.

20. Mr. Montoya and Mr. Petty assured Plaintiff that he would have one (1) year to turn the service department around due to the severity of its condition and poor performance.

21. Mr. Montoya created a pay plan for Plaintiff that would initially guarantee Plaintiff a minimum of $11,000 per month, and further provided that Plaintiff would receive commissions based on the success of the service department.

22. Based on the pay plan, Plaintiff reasonably anticipated yearly compensation in the range between $130,000 to $160,000.

23. Defendant was aware that Plaintiff reasonably anticipated that he would be compensated annually in the range of $130,000 to $160,000.

24. On August 10, 2020, Defendant made an offer of employment to Plaintiff. A true and accurate copy of this offer of employment is attached hereto as **Exhibit 2**.

25. Prior to accepting Defendant's offer of employment, Plaintiff did not reside in the State of Kansas.

26. Defendant was aware that Plaintiff did not reside in the State of Kansas.

27. Plaintiff reasonably relied on the promise of the pay plan as provided by Defendant, and accepted Defendant's offer of employment on August 10, 2020.

28. In reliance upon these representations made by Defendant, Plaintiff moved to the State of Kansas and, in so doing, incurred considerable expense and time related to this move.

29. Plaintiff began working for Defendant on September 14, 2020.

30. At the time that Plaintiff began working for Defendant, Plaintiff was able to manage his PTSD with relaxation and breathing exercises.

31. In October 2020, the Dealership's warranty score increased from 32 to 62.

32. By the end of October 2020, the Dealership achieved "warranty status" – a precursor for being removed from probation with Ford Motor Company.

33. By the end of 2020, the Dealership was no longer on probation with Ford Motor Company.

34. Plaintiff met his performance goals set forth by Defendant and received a performance-based bonus in January 2021.

35. John Dobbs, a managing partner of Defendant, sent a letter to Plaintiff commending him on his performance at the Dealership.

36. In 2021, Dan Diedrich ("**Mr. Diedrich**") replaced Mr. Montoya as the Dealership's General Manager.

37. In February 2021, Mr. Diedrich told Plaintiff that he believed Plaintiff was overpaid and informed him that he would be implementing a new pay plan for Plaintiff.

38. By March 2021, the Dealership's service department was profitable.

39. In March 2021, Defendant provided a new pay plan to Plaintiff which significantly reduced Plaintiff's compensation to $7,500 - $8,000 per month.

40. In March 2021, a number of occurrences caused Plaintiff's PTSD to intensify, resulting in Plaintiff being unable alleviate his PTSD symptoms with the relaxation and breathing exercises that worked previously. More specifically, these occurrences include:

   a. When Plaintiff was unable to work due to a positive COVID diagnosis, Defendant sublet work to be performed by Defendant's service department to a non-union shop;

   b. Mr. Diedrich instructed Plaintiff to cancel a planned vacation for Plaintiff's wedding anniversary, and forfeit Plaintiff's pre-payment for this vacation, without offering reimbursement from Defendant;

   c. Defendant held a meeting with managers and employees of the sales department where attendees were expected to vote on whether Defendant should fire a newly hired Guest Service Manager;

   d. Defendant's failure to timely provide Plaintiff with a new payment plan after being told that he would be receiving a new payment plan; and

    e. Defendant significantly reducing Plaintiff's compensation after finally providing Plaintiff with his new pay plan.

41. On April 6, 2021, Plaintiff informed Mr. Diedrich that Plaintiff would need to begin going to therapy to manage his PTSD.

42. Plaintiff informed Mr. Diedrich that Plaintiff would schedule his therapy sessions at the end of the day so as to be the least impactful to the performance of Plaintiff's job duties.

43. On April 14, 2021, Plaintiff overhead a telephone conversation where Mr. Diedrich stated that his service manager had problems, that he did not want to deal with it, and that he wanted to replace him.

44. That later that day on April 14, 2021, Plaintiff confronted Mr. Diedrich regarding the statements Plaintiff overheard Mr. Diedrich make while on the telephone.

45. Mr. Diedrich did not deny making the statements that Plaintiff overheard, including: (1) that his service manager had problems, (2) that he did not want to deal with it, and (3) that he wanted to replace him; and further told Plaintiff that he [Mr. Diedrich] knew what he [Mr. Diedrich] said on the telephone.

46. After April 14, 2021, Plaintiff was excluded from his regular meetings, and stopped receiving support from other departments within the Dealership.

47. On April 15, 2021, Defendant made a job posting for Plaintiff's position as service manager at the Dealership.

48. On April 30, 2021, Plaintiff was summoned to a meeting with Mr. Diedrich, the controller, and the human resources director for the Dealership.

49. At the April 30, 2021 meeting, Mr. Diedrich told Plaintiff that his employment with Defendant was being terminated.

50. In response, Plaintiff told Mr. Diedrich that he moved states to accept this position, incurred debt as a result of the move, and was now being fired for having PTSD.

51. Mr. Diedrich did not deny any of these statements.

52. Mr. Diedrich told Plaintiff that he did not need a reason to terminate him, and that he could fire Plaintiff because he did not like him.

53. Plaintiff is disabled and/or Defendant regarded him as disabled, as defined by the ADA, at all relevant times herein.

54. Plaintiff is a member of a protected class because of his disability and/or because he was regarded as being disabled, and because he requested an accommodation.

55. Specifically, Plaintiff suffers from PTSD which substantially limits his major life activities including: sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working.

56. At all relevant times, including prior to Plaintiff's termination, Defendant was aware that Plaintiff had a record of having such impairment.

57. Plaintiff is a qualified individual as defined by the ADA, due to his disability and/or Defendant's perception that Plaintiff is disabled.

58. Plaintiff could perform the essential functions of his job duties with Defendant, with or without reasonable accommodation.

59. Plaintiff was never disciplined in any manner during his employment with Defendant.

## Count I – Failure to Accommodate in Violation of the ADA

60. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the aforementioned paragraphs.

61. Plaintiff requested an accommodation permitting him to attend his therapy sessions for treatment of his PTSD.

62. Defendant denied Plaintiff's requested accommodation, even though it was reasonable.

63. Defendant has discriminated against Plaintiff on the basis of his disability by failing to accommodate him.

64. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, including wages and benefits, as well as other monetary and non-monetary benefits.

65. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, and related compensatory damages.

66. Defendant's actions were done with malice or reckless indifference to the federally protected rights of Plaintiff under the ADA, meriting an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including, but not limited to, back pay, lost benefits, front pay, injunctive relief, compensatory damages, punitive damages, reasonable attorneys' fees and costs incurred herein, pre- and post-judgment interest as permitted by law, and for such further legal and equitable relief as this Court deems just, and proper.

### Count II – Disability Discrimination in Violation of the ADA

67.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the aforementioned paragraphs.

68.     Defendant unlawfully and intentionally discriminated against Plaintiff based on his disability and/or because they regarded him as disabled, and acted in bad faith by interfering with, recklessly disregarding, and denying his legal rights when they terminated Plaintiff's employment.

69.     Plaintiff's disability, and/or Defendant's perception that Plaintiff is disabled, was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

70.     As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, including wages and benefits, as well as other monetary and non-monetary benefits.

71.     As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, and related compensatory damages.

72.     Defendant's actions were done with malice or reckless indifference to the federally protected rights of Plaintiff under the ADA, meriting an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including, but not limited to, back pay, lost benefits, front pay, injunctive relief, compensatory damages, punitive damages, reasonable attorneys' fees and costs incurred herein, pre- and post-judgment interest as permitted by law, and for such further legal and equitable relief as this Court deems just, and proper.

## Count III – Promissory Estoppel

73. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the aforementioned paragraphs.

74. Prior to accepting Defendant's offer of employment, Defendant provided a pay plan that guaranteed a minimum of $11,000 per month, as well as additional opportunities for commission-based pay to Plaintiff.

75. Prior to accepting Defendant's offer of employment, Defendant assured Plaintiff that he would have one (1) year to turn the service department around due to the severity of its condition and poor performance.

76. Based on the pay plan Defendant provided to Plaintiff, Plaintiff reasonably anticipated that he would be compensated annually in the range of $130,000 to $160,000.

77. At the time, Defendant was aware that Plaintiff reasonably anticipated that he would be compensated annually in the range of $130,000 to $160,000, if he accepted Defendant's offer of employment.

78. In reasonable reliance upon these representations made by Defendant, Plaintiff accepted Defendant's offer of employment on August 10, 2020.

79. In reliance upon these representations made by Defendant, Plaintiff moved to the State of Kansas and, in so doing, incurred considerable expense and time related to this move.

80. Plaintiff expeditiously improved the performance of the service department, and met and/or exceeded his commission goals that would have put him on track to earn the annual compensation range he anticipated as discussed with Mr. Montoya when accepting Defendant's offer of employment.

81. After Plaintiff made improvements to the service department, Defendant unilaterally amended Plaintiff's pay plan.

82. Defendant amended Plaintiff's pay plan without any justification, besides Mr. Diedrich's belief that Plaintiff was being paid too much.

83. Defendant significantly reduced Plaintiff's compensation.

84. Plaintiff reasonably relied on the representations made by Defendant regarding his compensation and the amount of time he would have to make improvements to the service department when he accepted the offer of employment with Defendant and moved to the State of Kansas.

85. Plaintiff has experienced a substantial injustice due to Defendant's unilateral change in Plaintiff's pay plan.

86. As a direct and proximate result of Defendant's unilateral and unwarranted change in Plaintiff's pay plan, Plaintiff has been deprived of income, including wages and commissions, as well as monetary and non-monetary benefits.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including back pay, front pay, injunctive relief, compensatory damages, and costs incurred herein, pre- and post-judgment interest as permitted by law, and for such further legal and equitable relief as this Court deems just, and proper.

### Count IV – Breach of Contract

87. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the aforementioned paragraphs.

88. In addition to the express obligations of Defendant pursuant to the offer of employment, Defendant assumed an implied obligation of good faith and fair dealing that

precluded Defendant from doing anything to prevent Plaintiff from receiving the benefits due to him pursuant to his acceptance of the offer of employment.

89.     After Plaintiff relocated to the State of Kansas, expeditiously improved the performance of the service department, assisted in removing Defendant from probation status with Ford Motor Company, and met/or exceeded his commission goals, Defendant unilaterally amended Plaintiff's pay plan, which significantly reduced his pay.

90.     Defendant breached its implied obligation of good faith and fair dealing, did not act with honesty in fact, and denied Plaintiff's expected benefits pursuant to his acceptance of Defendant's offer of employment when they unilaterally amended Plaintiff's pay plan.

91.     Plaintiff has been damaged by Defendant's breach of its implied obligation of good faith and fair dealing when Defendant unilaterally amended Plaintiff's pay plan that ultimately deprived Plaintiff from receiving the benefits due to him pursuant to his acceptance of the offer of employment.

WHEREFORE, Plaintiff prays for judgment against Defendant to be reasonably compensated for his losses including but not limited to lost income, back pay, front pay, compensatory damages, his costs and attorney fees, and such other and further compensation as the Court may deem is just, fair and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

    Respectfully Submitted by:

    **BEAM-WARD, KRUSE, WILSON**
        **& FLETES, LLC**

    */s/ Mark Beam-Ward*
    MARK BEAM-WARD, KS #10071
    JESSICA G. LILE, KS #28404
    8645 College Boulevard, Suite 250
    Overland Park, Kansas 66210
    (913) 339-6888/ (913) 339-9653 (Fax)
    mbeamward@bkwflaw.com
    jlile@bkwflaw.com
    **ATTORNEYS FOR PLAINTIFF**